**KEMP JONES, LLP**
J. Randall Jones, Esq. (#1927)
r.jones@kempjones.com
Spencer H. Gunnerson, Esq. (#8810)
s.gunnerson@kempjones.com
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV 89169

**MAYER BROWN LLP**
KRISTINE M. YOUNG (*pro hac vice to be filed, will comply with LR IA 11-2 within 14 days*)
kyoung@mayerbrown.com
DANIEL P. VIRTUE (*pro hac vice to be filed, will comply with LR IA 11-2 within 14 days*)
dvirtue@mayerbrown.com
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600

*Attorneys for Ascaya, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ASCAYA, INC., a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> THE HOWARD HUGHES COMPANY, LLC, a Delaware limited liability company, <br><br> Defendant. | **CASE NO.**: 2:24-cv-00862 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Ascaya, Inc. ("Ascaya" or "Plaintiff"), by its attorneys, Mayer Brown LLP and Kemp Jones, LLP, as and for its Complaint against Defendant, The Howard Hughes Company, LLC ("HHC" or "Defendant"), hereby alleges as follows based on knowledge of its own actions, and on information and belief as to Defendant's actions (unless indicated otherwise herein):

**PRELIMINARY STATEMENT**

1.      This is an action for federal trademark infringement (15 U.S.C. § 1114); federal unfair competition (15 U.S.C. § 1125(a)); common law trademark infringement and unfair competition; unfair and deceptive trade practices (NRS § 598.0915); and consumer fraud (NRS § 41.600), based upon Defendant's willful infringement of Ascaya's registered ASCAYA (pronounced Ah-SKY-Ah) trademarks and unfair trade practices.

2.      Particularly, this action arises out of Defendant's operation of a new luxury residential community in Summerlin, Nevada, offering a luxury custom home community with the highly similar brand name "AMAYA" ("Infringing Mark") (pronounced Ah-MY-Ah). To promote and sell its residential community, Defendant improperly uses AMAYA to mislead consumers into believing that its services are endorsed and/or sponsored by and/or affiliated with Ascaya.

3.      In an attempt to amicably resolve this matter, on February 2, 2024, shortly after being alerted to Defendant's use of the Infringing Mark, Ascaya issued a letter to Defendant, putting Defendant on notice of its infringing activities. Since Ascaya issued its initial letter, the parties have exchanged communications about this matter, the infringement issues, and Ascaya's demands.

4.      Despite Ascaya's requests for Defendant to cease its infringing activities, Defendant has refused to cease use of the Infringing Mark, and Defendant continues to trade off of Ascaya's intellectual property rights and goodwill for commercial gain.

5.      Rather than remediating the issues, on April 5, 2024, Defendant filed a retaliatory petition to cancel two of Ascaya's federal trademark registrations for ASCAYA by initiating a Cancellation Proceeding before the Trademark Trial and Appeal Board ("TTAB") (Cancellation No. 92084865, 1 TTABVUE, the "TTAB Proceeding"). In the TTAB Proceeding, Defendant twice admitted that "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's Summerlin Project [its AMAYA development] is located in a *similar geographic area*

in Las Vegas, Nevada" (emphasis added). April 5, 2024, Petition to Cancel, Cancellation No. 92084865, 1 TTABVUE 9, 10.

6.      Defendant purposefully continues to infringe Ascaya's trademarks, despite having been put on express notice of its infringing activities over three months ago. Accordingly, Ascaya now brings this action to put an end to Defendant's intentional infringing activities and to cease the ongoing and irreparable harm being suffered by Ascaya.

## THE PARTIES

7.      Plaintiff, Ascaya, Inc., is a corporation organized under the laws of the state of Nevada, with a principal place of business at One Ascaya Boulevard, Henderson, Nevada 89012.

8.      On information and belief, Defendant, The Howard Hughes Company, LLC, is a limited liability company under the laws of the state of Delaware, with a principal place of business at 9950 Woodloch Forest Drive, Suite 1100, The Woodlands, Texas 77380.

## JURISDICTION AND VENUE

9.      This is an action for trademark infringement, unfair competition, unfair and deceptive trade practices and consumer fraud. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and Nevada state and common law. This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. § 1331, 1338 and 1367 and 15 U.S.C. § 1121.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because, on information and belief, a substantial part of the events giving rise to this action occurred in and continues to occur within the District of Nevada.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

I.      **Ascaya and Its Services**

11.     Ascaya was incorporated as a Nevada corporation in 1990 under the name W.L. of Nevada, Inc.[1] Shortly after it was incorporated, Ascaya purchased a 632-acre site in the McCullough Mountain Range within Henderson, Nevada (the "Site"). Planning for the development of the Site commenced in early 2004. Since that time, Ascaya has become a leading developer in the premium residential housing market in the greater Las Vegas metropolitan area.

---

[1] W.L. of Nevada, Inc.'s corporate name was changed to Ascaya, Inc. on February 27, 2014.

PLAINTIFF'S COMPLAINT

12. Ascaya has a significant presence in Nevada, which is home to the ASCAYA Community.

13. Beginning in 2004, Ascaya spent over $250,000,000 grading and improving the Site, creating individual lots, constructing rock walls, building roads and building infrastructure related to water, sewer, storm water, electricity, cable and other utilities on the Site, and developing a new luxury residential community that, in 2007, it named "ASCAYA" (the "ASCAYA Community"). Attached hereto as **Exhibit 1** is a true and correct copy of Ascaya's website, <www.ascaya.com>. *See* **Exh. 1**.

14. Starting in or about May 2007, Ascaya began activities to promote its services related to, *inter alia*, residential construction planning, residential land development, residential site selection, and real estate management services for a residential community related to the ASCAYA Community. In 2008, Ascaya began offering home sites for sale in the ASCAYA Community, which displayed the ASCAYA name at the entrance, providing potential purchasers tours of the property, discussing available home sites at the onsite sales center, which opened in 2008, and taking reservations from potential buyers. Since that time, Ascaya has continued its services related to the ASCAYA Community, namely, community layout planning, residential construction planning, residential construction supervision, residential land development, residential real estate site selection, real estate brokerage, real estate management services for residential communities, and operation of a planned residential community. As of this date, approximately 150 lots out of a total of 310 planned lots located within the ASCAYA Community have been sold to third-party buyers.

15. In 2014, Ascaya completed the design and construction of a 23,000 sq. ft. community clubhouse with dining and event spaces, a resort-sized swimming pool, children's pavilion and health, fitness and exercise facilities such as tennis, pickleball, and basketball courts. In addition, other improvements created by Ascaya within the Site include bike and hiking paths, 24/7 community security, and parks for families to gather. In 2024, Ascaya announced the continued expansion of the ASCAYA Community with the new "The Canyon at Ascaya"

development within the Site that will be constructed by Ascaya and will add a number of additional turnkey residences that will be incorporated into the ASCAYA Community.

16.     Through these concerted efforts, the ASCAYA trademark enjoys significant goodwill and is among Plaintiff's most valuable commercial assets.

17.     Over the last 20 years, Ascaya has significantly invested in and supported the growing Las Vegas suburban area through real estate management services for residential communities, real estate brokerage, operating a planned residential community, and residential real estate development, and land development services, namely, planning and laying out residential communities, real estate site selection, construction planning, and construction supervision. These services have expanded to include dining, catering, health, and lifestyle services within the planned luxury Ascaya Community (the services described above, collectively referred to as the "ASCAYA Services"). Through these services, Ascaya has provided local jobs and attracted consumers to the region to partake in the luxurious ASCAYA Community.

18.     Throughout this time, Ascaya has invested millions of dollars to promote the ASCAYA brand in the United States. Ascaya's promotional activities have included, by way of example, print and online advertisements, through real estate brokers, signage on site, pamphlets and brochures.

19.     Ascaya also promotes its services nationwide using social media websites, including Facebook, Instagram, YouTube, and X (formerly Twitter). True and correct copies of Ascaya's Facebook page, <www.facebook.com/ascaya>, Ascaya's Instagram page, <https://www.instagram.com/ascayanv/>, Ascaya's YouTube page, <https://www.youtube.com/@ascaya>, and Ascaya's X page, < https://twitter.com/AscayaNV>, are attached hereto as **Exhibits 2, 3, 4, and 5**.

20.     As a result of these significant investments, the ASCAYA brand and the ASCAYA Services have become widely recognized among consumers in the United States, and consumers in the United States have come to readily associate the ASCAYA brand with the ASCAYA Services, including luxury real estate and luxurious amenities and activities, all designed to foster connectivity and provide rich, meaningful experiences for home owners and community members.

- 4 -

II.     **Ascaya's Intellectual Property**

A.      **The ASCAYA Marks**

21.     Ascaya, Inc. is the current registrant of record at the USPTO for the United States trademark registrations for the ASCAYA word mark (the "ASCAYA Marks").

22.     The ASCAYA Marks are as follows:

| Mark | Reg. No. | Registration Date | Int. Cl. |
|---|---|---|---|
| ASCAYA | 3,588,854 (The "'854 Registration") | March 10, 2009 | 36 |
| ASCAYA | 3,558,376 (The "'376 Registration") | January 6, 2009 | 37 |
| ASCAYA | 6,037,395 (The "'395 Registration") | April 21, 2020 | 41 |
| ASCAYA | 7,133,600 (the "'600 Registration") | August 8, 2023 | 43 |

23.     Attached hereto as **Exhibit 6** are true and correct copies of the registration certificates for the '854, '376, '395, and '600 Registrations, respectively.

24.     The '854, '376, '395, and '600 Registrations, respectively, are registered on the Principal Trademark Register. *See* **Exh. 6**.

25.     Because the '854, '376, '395, and '600 Registrations, respectively, are on the Principal Trademark Register, all of the ASCAYA Marks are *prima facie* valid.

26.     The '376 Registration is incontestable within the meaning of 15 U.S.C. § 1065.

27.     Because the '376 Registration is incontestable, the ASCAYA Marks covered by this registration are conclusively valid.

28.     The ASCAYA Marks are inherently distinctive, as evidenced in part by the incontestable trademark registration and the fact that the ASCAYA name is arbitrary and/or fanciful, and the ASCAYA Marks have also acquired distinctiveness, and commercial strength in the United States, through Ascaya's exclusive use in commerce for over 15 years, robust marketing and promotional efforts, and extensive national customer base.

29.     For nearly two decades, Ascaya has invested (and continues investing) millions of dollars on advertising, marketing, and promoting the ASCAYA Community and ASCAYA Services in the United States.

30.     Ascaya's advertising, marketing, and promotional efforts include, for example, Internet advertisements, and social media advertising campaigns touting its premium home sites and luxurious amenities and related services. These advertisements and promotional materials consistently feature the ASCAYA Marks in connection with the ASCAYA Services, which has become a distinctive indicator of source that consumers in the United States have come to associate exclusively with Ascaya.

31.     The ASCAYA Services offered under the ASCAYA Marks have enjoyed enormous commercial success. Indeed, Ascaya has realized millions of dollars in revenue from services offered under the ASCAYA Marks, with approximately 150 luxury home sites being sold to date in the ASCAYA Community and continued development of the ASCAYA Community to date.

32.     Due to Ascaya's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage promoting its services offered under the ASCAYA Marks, consumers in the United States associate the ASCAYA Marks uniquely with the Ascaya Community and recognize the ASCAYA Marks as identifying Ascaya as the exclusive source of services offered under the ASCAYA Marks.

**III.     Defendant's Unlawful Activities**

33.     On information and belief, Defendant began using the "AMAYA" name in or about January 2024, with the intent of offering "a new pinnacle in luxury real estate located within the Summerlin community in Las Vegas. It is set to redefine luxury living with its custom home sites and unparalleled amenities." Attached hereto as **Exhibit 7** is a true and correct copy of a third-party real estate broker's website promoting the AMAYA community, <https://vegasluxurysales.com/las-vegas-communities/amaya/>.

34.     Defendant's AMAYA community is located only twenty-two miles from the ASCAYA Community (shown below in **Figure 1**), just a thirty-five minute drive within the same county (Clark) in Nevada, and both are in near proximity to the city of Las Vegas.



**Figure 1.**

35.    A significant part of Defendant's business is dedicated to the design, construction, and management of real estate-related goods and services. These goods and services are virtually identical to those offered by Plaintiff in connection with the ASCAYA Community, as Defendant also offers luxury real estate planning, development, construction and management services with luxurious amenities ("Defendant's Services"). *See*, *e.g.*, **Exhibit 7**. *See also* a true and correct copy of Defendant's website illustrating the Defendant's Services, <https://www.howardhughes.com/our-company/homes/> is attached hereto as **Exhibit 8**.

36.    On information and belief, Defendant began promoting its use of the Infringing Mark at an invite-only event for the top real estate brokers (approximately 20 people) in the Las Vegas metro area. A copy of an independent third-party broker's marketing email for the AMAYA community is attached hereto as **Exhibit 9** and shown below as **Figure 2**:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Figure 2.**

37.     That same independent third-party broker, Luxury Estates International, also promotes homes within the ASCAYA Community as shown below in **Figure 3**.

- 8 -

**Figure 3.**

**Source: https://luxuryestates.com/; visited 4/25/2024**

38.     Defendant currently offers its services through various third-party real estate brokers through their web sites, such as <https://smithteamlasvegas.com/buying/discover-the-ultimate-in-las-vegas-luxury-living-at-amaya-village/> and <https://lvrealty4sale.com/amaya-summerlin-west-custom-home-sites/>, along with promotional emails and other marketing campaigns. True and correct copies of the third-party brokers websites are attached hereto as **Exhibits 10-13**.

39.     As third-party real estate brokers often promote and market similar communities on their websites, the ASCAYA Community and the AMAYA community are often promoted on the same websites, and in some cases, directly next to one another:

PLAINTIFF'S COMPLAINT



**Figure 4.**

*See* **Exh. 7**.

40.     To promote its AMAYA community directly and through third-party brokers, Defendant uses the Infringing Mark in a number of ways that infringe Ascaya's rights in the ASCAYA Marks. Specifically, Defendant uses the confusingly similar Infringing Mark as its primary brand name pervasively throughout Defendant's promotional materials, with primary prominence and parallel desert mountain range imagery that is confusingly similar to the ASCAYA Marks. *See*, *e.g.*, **Exhs. 7, 10, 11, 12, 13**.

41.     Defendant's unauthorized uses of the Infringing Mark falsely suggest endorsement, sponsorship by and/or affiliation with Ascaya. Further, like Ascaya, Defendant's advertising prominently features identical and/or confusingly similar luxury amenities, including, but not limited to, mountain side home sites, custom homes, luxury clubhouses, and wellness facilities, all within a secure community. *See*, *e.g.*, **Exhs. 7, 9, 10**.

42.     In addition to offering identical services to Ascaya, AMAYA is visually and phonetically highly similar to ASCAYA. First, both marks begin with the same letter and sound ("A" and "Ah") and end with the same suffix ("AYA"). The mere difference between two letters ("SC" v. "M") is not enough to differentiate the two marks, creating a similar overall impression.

43.    Second, the term "AMAYA" has various different meanings in both Spanish and Japanese, pointing to consumers not being able to immediately identify the term "AMAYA" as having a specific meaning. The term "ASCAYA" does not have a particular meaning and is a strong and arbitrary and/or fanciful term, entitling Ascaya to a broad scope of protection.

44.    Defendant adopted "AMAYA" to trade off the goodwill of Ascaya, and Defendant's use of "AMAYA" is likely to cause confusion among consumers as to the source, sponsorship and/or affiliation of Defendant with Ascaya.

45.    As illustrated *supra*, the likelihood of consumer confusion is particularly heightened due to the fact that Defendant offers identical services to the ASCAYA Services, in the same geographic area, and that Defendant's Services are advertised and promoted through identical channels of trade to the same consumer groups. *See*, *e.g.*, **Figure 4, Exh. 7**. Indeed, in the TTAB Proceeding, Defendant *twice* admitted "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's Summerlin Project [its AMAYA development] is located in a *similar geographic area* in Las Vegas, Nevada" (emphasis added). Cancellation No. 92084865, 1 TTABVUE 9, 10.

46.    Since Defendant's inception of the AMAYA community, Defendant has had constructive knowledge of Ascaya's rights in its ASCAYA Marks as a result of the federal trademark registrations for the ASCAYA Marks. Defendant could have easily made a simple trademark search, which would have revealed the use of the Ascaya mark and its similarity to "Amaya", or alternatively, a trademark search was made by Defendant, Defendant discovered the existence of the "Ascaya" mark and its similarity to "Amaya," and nonetheless chose to ignore this.

47.    Defendant has also had constructive knowledge of the ASCAYA Marks based on Ascaya's extensive use of the ASCAYA Marks in commerce and in the same geographic area in which Defendant operates and plans to offer services in connection with the Infringing Mark. Further, Defendant has had actual and definitive notice of Ascaya's trademark rights since February 2, 2024, when Ascaya issued its initial demand letter to Defendant.

48.    Defendant's knowing and intentional infringement of the ASCAYA Marks is willful, and is likely to cause confusion among consumers as to the source, sponsorship and/or

affiliation of Defendant's Services with the ASCAYA Services. Further, Defendant's infringing activities have irreparably harmed and continue to irreparably harm Ascaya's reputation and the ASCAYA brand.

49.     After over three months of communications between counsel for Defendant and counsel for Ascaya and being directly and overtly on notice of Ascaya's rights, Defendant continues to infringe the ASCAYA Marks and has refused to comply with Ascaya's demands to change the AMAYA name to a name that is not the same or confusingly similar to the ASCAYA Marks. Accordingly, Ascaya is left with no other option than to file this lawsuit to protect some of its most valuable assets—its brand identifiers.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*

*(Infringement of the Federally Registered ASCAYA Marks)*

50.     Ascaya incorporates the allegations set forth in paragraphs 1–49 of the Complaint as though set forth fully herein.

51.     Count I is for federal trademark infringement under 15 U.S.C. § 1114.

52.     Ascaya has the exclusive right to use the ASCAYA Marks in United States commerce for the ASCAYA Services.

53.     Ascaya's exclusive rights in and to the ASCAYA Marks predate any rights that Defendant could establish in and to any mark that consists of AMAYA in whole and/or in part.

54.     As set forth in paragraphs 21-27, *supra*, the ASCAYA Marks are registered with the USPTO.

55.     The ASCAYA Marks are arbitrary and/or fanciful, and, therefore, are inherently distinctive.

56.     The ASCAYA Marks identify Plaintiff as the exclusive source of services offered under the ASCAYA Marks, and therefore have acquired distinctiveness.

57.     Defendant's use of the Infringing Mark in interstate commerce in connection with Defendant's Services, including luxury real estate development, is likely to continue to cause

significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship and/or association of Ascaya and/or its services, on the one hand, with Defendant and/or its services, on the other.

58.     Defendant is using the Infringing Mark to develop, advertise, market, promote, offer for sale, and/or sell Defendant's Services.

59.     Defendant's Services and the ASCAYA Services appeal to overlapping customer bases, namely, consumers of luxury residential real estate. Indeed, Defendant admitted that "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's Summerlin Project [its AMAYA development] *is located in a similar geographic area* in Las Vegas, Nevada" (emphasis added). Cancellation No. 92084865, 1 TTABVUE 9, 10 (emphasis added).

60.     Consumers encounter Defendant's Services and the ASCAYA Services in overlapping and, in some instances, identical, trade channels.

61.     Defendant's use of the Infringing Mark in interstate commerce on, for, and/or in connection with the development, advertising, marketing, promoting, and/or offering for sale of luxury home sites and homes is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about the source, origin, sponsorship, approval, endorsement, affiliation, and/or association of Defendant's Services.

62.     Defendant's use of the Infringing Mark in interstate commerce on, for, and/or in connection with the development, advertising, marketing, promoting, and/or offering for sale of luxury home sites and homes is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about the source, origin, sponsorship, approval, endorsement, affiliation, and/or association of Ascaya's ASCAYA Marks.

63.     Ascaya has not consented to Defendant's actions.

64.     Based on the federal registrations of the ASCAYA Marks and Ascaya's use of the same, Defendant had actual and constructive knowledge of Ascaya's superior rights in and to the ASCAYA Marks prior to Defendant's adoption and use of the Infringing Mark, and Defendant continues to use the Infringing Mark with actual knowledge of its infringing conduct.

65.     Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Infringing Mark in interstate commerce, to which Defendant is not entitled at law or in equity.

66.     Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement of the ASCAYA Marks under 15 U.S.C. § 1114.

67.     Ascaya has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

68.     Ascaya has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

*(Unfair Competition, False Endorsement, False Association, and False Designation of Origin*

*Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))*

*(Use of the ASCAYA Marks)*

69.     Ascaya incorporates the allegations set forth in paragraphs 1-68 of the Complaint as though set forth fully herein.

70.     Count II is for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a).

71.     Ascaya has the exclusive right to use the ASCAYA Marks in United States commerce for the ASCAYA Services.

72.     Ascaya's exclusive rights in and to the ASCAYA Marks predate rights that Defendant could establish in and to any mark that consists of AMAYA in whole and/or in part.

73.     The ASCAYA Marks are arbitrary and/or fanciful, and, therefore, are inherently distinctive.

74.     The ASCAYA Marks identify Plaintiff as the exclusive source of services offered under the ASCAYA Marks, and therefore have acquired distinctiveness.

75.     Defendant is reproducing and using the Infringing Mark, which is confusingly similar to the ASCAYA Marks, to develop, advertise, market, promote, offer for sale, and/or sell Defendant's Services.

76.    Defendant's Services and the ASCAYA Services appeal to overlapping customer bases, namely, consumers of luxury residential real estate. Indeed, Defendant admitted that "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's Summerlin Project [its AMAYA development] *is located in a similar geographic area* in Las Vegas, Nevada" (emphasis added). Cancellation No. 92084865, 1 TTABVUE 9, 10 (emphasis added).

77.    Consumers encounter Defendant's Services and the ASCAYA Services in overlapping and, in some instances, identical, trade channels.

78.    Defendant's use of the Infringing Mark in interstate commerce in connection with its new luxury real estate community and Defendant's Services is likely to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship and/or association of Ascaya and/or its services, on the one hand, with Defendant and/or its services, on the other.

79.    Ascaya has not consented to Defendant's actions.

80.    Based on the federal registrations of the ASCAYA Marks and Ascaya's use of the same, Defendant had actual and constructive knowledge of Ascaya's superior rights in and to the ASCAYA Marks prior to Defendant's adoption and use of the Infringing Mark, and Defendant continues to use the Infringing Mark with actual knowledge of its infringing conduct.

81.    Upon information and belief, Defendant copied, adopted, and/or uses the Infringing Mark in interstate commerce in furtherance of Defendant's willful, deliberate, and bad-faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of the ASCAYA Services offered under the ASCAYA Marks in interstate commerce, to which Defendant is not entitled at law or in equity.

82.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a).

83.    Ascaya has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

84.     Ascaya has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

*(Common Law Trademark Infringement)*

*(Infringement of the ASCAYA Marks)*

85.     Ascaya incorporates the allegations set forth in paragraphs 1-84 of the Complaint as though set forth fully herein.

86.     Count III is for infringement under the common law of Nevada.

87.     Ascaya has common law rights in Nevada for the ASCAYA Marks through Ascaya's longstanding use of the ASCAYA Marks in Nevada.

88.     Ascaya has used the ASCAYA Marks in Nevada since at least as early as 2008.

89.     Upon information and belief, Defendant began using the Infringing Mark in connection with Defendant's Services in Nevada in January 2024.

90.     The ASCAYA Marks are arbitrary and/or fanciful, and, therefore, are inherently distinctive.

91.     The ASCAYA Marks identify Plaintiff as the exclusive source of services offered under the ASCAYA Marks, and therefore have acquired distinctiveness.

92.     Defendant's use of the Infringing Mark in interstate commerce in connection with its new luxury real estate development is likely to continue to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship and/or association of Ascaya and/or its services, on the one hand, with Defendant and/or its services, on the other.

93.     Defendant is using the Infringing Mark to develop, advertise, market, promote, offer for sale, and/or sell Defendant's Services.

94.     Defendant's Services and the ASCAYA Services appeal to overlapping customer bases, namely, consumers of luxury residential real estate. Indeed, Defendant admitted that "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's Summerlin Project [its AMAYA development] *is located in a similar geographic area* in Las Vegas, Nevada" (emphasis added). Cancellation No. 92084865, 1 TTABVUE 9, 10 (emphasis added).

95.     Consumers encounter Defendant's Services and the ASCAYA Services in overlapping and, in some instances, identical, trade channels.

96.     As the direct and proximate result of Defendant's infringement of Ascaya's common law trademark rights under Nevada and other common law, Ascaya has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

97.     Ascaya has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

*(Unfair and Deceptive Trade Practices, NRS § 598.0915)*

98.     Ascaya incorporates the allegations set forth in paragraphs 1-97 of the Complaint as though set forth fully herein.

99.     Count IV is for unfair and deceptive trade practices under Nevada state law, NRS § 598.

100.    Ascaya has the exclusive right to use the ASCAYA Marks in United States commerce for the ASCAYA Services.

101.    Ascaya's exclusive rights in and to the ASCAYA Marks predate rights that Defendant could establish in and to any mark that consists of AMAYA in whole and/or in part.

102.    The ASCAYA Marks are arbitrary and/or fanciful, and, therefore, are inherently distinctive.

103.    The ASCAYA Marks identify Plaintiff as the exclusive source of services offered under the ASCAYA Marks, and therefore have acquired distinctiveness.

104.    Defendant is reproducing and using the Infringing Mark, which is confusingly similar to the ASCAYA Marks, to develop, advertise, market, promote, offer for sale, and/or sell Defendant's Services.

105.    Defendant's Services and the ASCAYA Services appeal to overlapping customer bases, namely, consumers of luxury residential real estate. Indeed, Defendant admitted that "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's Summerlin Project [its AMAYA development] *is located in a similar geographic area* in Las

Vegas, Nevada" (emphasis added). Cancellation No. 92084865, 1 TTABVUE 9, 10 (emphasis added).

106.    Consumers encounter Defendant's Services and the ASCAYA Services in overlapping and, in some instances, identical, trade channels.

107.    Defendant's use of the Infringing Mark in connection with its luxury real estate community and Defendant's Services is likely to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship and/or association of Ascaya and/or its services, on the one hand, with Defendant and/or its services, on the other.

108.    Defendant's continued use of the Infringing Mark constitutes intentional, willful, and reckless disregard for Ascaya's rights, as Defendant has had constructive knowledge of Ascaya's rights in the ASCAYA Marks due to the extensive use and registration of the ASCAYA MARKS and has had actual knowledge of Ascaya's rights since the issuance of Ascaya's first demand letter on February 2, 2024.

109.    Ascaya has not consented to Defendant's actions.

110.    In the course of conducting Defendant's business, Defendant engaged in deceptive trade practices by knowingly making false representations as to the source, sponsorship, affiliation, connection, approval and/or association with Ascaya by using a mark that is confusingly similar to the ASCAYA Marks.

111.    As the direct and proximate result of Defendant's unfair and deceptive trade practices, Ascaya has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

112.    Ascaya is entitled to recover from Defendant treble damages, as well as all costs and expenses, including reasonable attorneys' fees, pursuant to Nev. Rev. Stat. § 598.0915.

**FIFTH CLAIM FOR RELIEF**

*(Common Law Unfair Competition)*

113.    Ascaya incorporates the allegations set forth in paragraphs 1-112 of the Complaint as though set forth fully herein.

114.    Count V is for violations of unfair competition under Nevada common law.

115.    Ascaya has the exclusive right to use the ASCAYA Marks in United States commerce for the ASCAYA Services.

116.    Ascaya's exclusive rights in and to the ASCAYA Marks predate rights that Defendant could establish in and to any mark that consists of AMAYA in whole and/or in part.

117.    The ASCAYA Marks are arbitrary and/or fanciful, and, therefore, are inherently distinctive.

118.    The ASCAYA Marks identify Plaintiff as the exclusive source of services offered under the ASCAYA Marks, and therefore have acquired distinctiveness.

119.    Defendant is reproducing and using the Infringing Mark, which is confusingly similar to the ASCAYA Marks, to develop, advertise, market, promote, offer for sale, and/or sell Defendant's Services.

120.    Defendant's Services and the ASCAYA Services appeal to overlapping customer bases, namely, consumers of luxury residential real estate. Indeed, Defendant admitted that "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's Summerlin Project [its AMAYA development] *is located in a similar geographic area* in Las Vegas, Nevada" (emphasis added). Cancellation No. 92084865, 1 TTABVUE 9, 10 (emphasis added).

121.    Consumers encounter Defendant's Services and the ASCAYA Services in overlapping and, in some instances, identical, trade channels.

122.    Defendant's use of the Infringing Mark in connection with its luxury real estate community and Defendant's Services is likely to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship and/or association of Ascaya and/or its services, on the one hand, with Defendant and/or its services, on the other.

123.    Defendant's continued use of the Infringing Mark constitutes intentional, willful, and reckless disregard for Ascaya's rights, as Defendant has had constructive knowledge of Ascaya's rights in the ASCAYA Marks due to the extensive use and registration of the ASCAYA MARKS and has had actual knowledge of Ascaya's rights since the issuance of Ascaya's first demand letter on February 2, 2024.

124.   Ascaya has not consented to Defendant's actions.

125.   In the course of conducting Defendant's business, Defendant engaged in unfair competition by knowingly making false representations as to the source, sponsorship, affiliation, connection, approval and/or association with Ascaya by using a mark that is confusingly similar to the ASCAYA Marks.

126.   As the direct and proximate result of Defendant's unfair competitive actions, Ascaya has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

127.   Ascaya has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**

*(Consumer Fraud, NRS § 41.600)*

128.   Ascaya incorporates the allegations set forth in paragraphs 1-127 of the Complaint as though set forth fully herein.

129.   Count VI is for consumer fraud under Nevada state law, NRS § 41.600.

130.   Ascaya has the exclusive right to use the ASCAYA Marks in United States commerce for the ASCAYA Services.

131.   Ascaya's exclusive rights in and to the ASCAYA Marks predate rights that Defendant could establish in and to any mark that consists of AMAYA in whole and/or in part.

132.   The ASCAYA Marks are arbitrary and/or fanciful, and, therefore, are inherently distinctive.

133.   The ASCAYA Marks identify Plaintiff as the exclusive source of services offered under the ASCAYA Marks, and therefore have acquired distinctiveness.

134.   Defendant is reproducing and using the Infringing Mark, which is confusingly similar to the ASCAYA Marks, to develop, advertise, market, promote, offer for sale, and/or sell Defendant's Services.

135.   Defendant's Services and the ASCAYA Services appeal to overlapping customer bases, namely, consumers of luxury residential real estate. Indeed, Defendant admitted that "Registrant [Ascaya] is one of Petitioner's [Defendant's] *direct competitors* and Petitioner's

Summerlin Project [its AMAYA development] *is located in a similar geographic area* in Las Vegas, Nevada" (emphasis added). Cancellation No. 92084865, 1 TTABVUE 9, 10 (emphasis added).

136.    Consumers encounter Defendant's Services and the ASCAYA Services in overlapping and, in some instances, identical, trade channels.

137.    Defendant's use of the Infringing Mark in interstate commerce in connection with its new luxury real estate community and Defendant's Services is likely to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship and/or association of Ascaya and/or its services, on the one hand, with Defendant and/or its services, on the other.

138.    Defendant's continued use of the Infringing Mark constitutes intentional, willful, and reckless disregard for Ascaya's rights as Defendant has had constructive knowledge of Ascaya's rights in the ASCAYA Marks due to the extensive use and registration of the ASCAYA MARKS and has had actual knowledge of Ascaya's rights since the issuance of Ascaya's first demand letter on February 2, 2024.

139.    Ascaya has not consented to Defendant's actions.

140.    In the course of conducting Defendant's business, Defendant engaged in deceptive trade practices by knowingly making false representations as to the source, sponsorship, affiliation, connection, approval and/or association with Ascaya by using a mark that is confusingly similar to the ASCAYA Marks.

141.    By violating NRS § 598.0915, Defendant has engaged in consumer fraud under NRS § 41.600.

142.    As the direct and proximate result of Defendant's unfair and deceptive trade practices, Ascaya has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

143.    Ascaya is entitled to recover from Defendant treble damages, as well as all costs and expenses, including reasonable attorneys' fees, pursuant to NRS § 41.600.

1

**PRAYER FOR RELIEF**

2      WHEREFORE, as a result of the unlawful acts of Defendant set forth in each of the counts

3  above, Plaintiff prays that the Court enter a judgment against Defendant:

4      a) Preliminarily and permanently enjoining Defendant, its agents, servants, employees,

5         officers and all persons in active concern and participation with them:

6         i.    From using the ASCAYA Marks or any marks similar thereto (including,

7               without limitation, the Infringing Mark) in connection with the development,

8               advertising for sale, promotion or sale of any unauthorized goods or services,

9               including the development, advertisement, promotion, holding for sale or

10              selling of Defendant's Services;

11        ii.   From using any logo, trade name or trademark that may be calculated to

12              falsely represent or that has the effect of falsely representing that the goods

13              or services of Defendant (including, without limitation, Defendant's

14              Services) are sponsored by, authorized by or in any way associated with

15              Plaintiff, the ASCAYA brand, and/or any of the ASCAYA Services;

16        iii.  From infringing Plaintiff's trademarks; or

17        iv.   From falsely representing itself (expressly or implicitly) as being connected

18              with, sponsored by or associated with Plaintiff or the ASCAYA brand.

19     b) Ordering the destruction of all unauthorized goods and materials bearing any copy or

20        colorable imitation of the ASCAYA Marks.

21     c) Pursuant to 15 U.S.C. § 1116(a), ordering Defendant to file with the Court and serve

22        upon Ascaya's counsel, within thirty (30) days after service of the order of injunction,

23        a report in writing under oath setting forth in detail the manner and form in which

24        Defendant have complied with the injunction.

25     d) Finding that, by the acts complained of above, Defendant has infringed Ascaya's

26        ASCAYA Marks in violation of 15 U.S.C. § 1114.

27

28

e)  Finding that, by the acts complained of above, Defendant has engaged in unfair competition, false designation of origin, false association, and/or false endorsement in violation of 15 U.S.C. § 1125(a).

f)  Finding that, by the acts complained of above, Defendant has engaged in unfair and deceptive trade practices in violation of Nev. Rev. Stat. § 598.0915.

g)  Finding that, by the acts complained of above, Defendant has engaged in consumer fraud practices in violation of Nev. Rev. Stat. § 41.600.

h)  Finding that, by the acts complained of above, Defendant has engaged in unfair competition in violation of Nevada common law.

i)  Finding that, by the acts complained of above, Defendant has engaged in trademark infringement in violation of Nevada common law.

j)  Finding that the acts complained of above constitute willful infringement of the ASCAYA Marks.

k)  Finding that Defendant's acts complained of above render this case "exceptional" within the meaning of 15 U.S.C. § 1117.

l)  Ordering Defendant to provide Ascaya with a full accounting of all development, and offers of sale of services under the Infringing Mark (including, without limitation, Defendant's Services), including all profits derived therefrom.

m)  Ordering Defendant to pay Ascaya:

    i.  Defendant's profits gained from its offering of products or services under the Infringing Mark (including, without limitation, Defendant's Services);

    ii.  Treble damages in connection with Defendant's infringement of the ASCAYA Marks; and

    iii.  Ascaya's costs and reasonable attorneys' fees incurred in this matter.

n)  Awarding Ascaya pre-judgment and post-judgment interest against Defendant.

o)  Awarding Ascaya such other and further relief as the Court may deem just and proper.

1

## JURY DEMAND

2      Ascaya requests a trial by jury for all issues so triable pursuant to FED. R. CIV. P. 38(b)

3  and 38(c).

4

                                 Respectfully submitted,

5

6                                  **KEMP JONES**

7  Dated: May 7, 2024             */s/ Spencer Gunnerson*

                                  J. Randall Jones, Esq. (#1927)

8                                r.jones@kempjones.com

                                  Spencer H. Gunnerson, Esq. (#8810)

9                                s.gunnerson@kempjones.com

                                  3800 Howard Hughes Parkway, 17th Floor

10                              Las Vegas, NV 89169

11                              **MAYER BROWN LLP**

12                          KRISTINE M. YOUNG (*pro hac vice to be filed*)

                          kyoung@mayerbrown.com

13                       DANIEL P. VIRTUE (*pro hac vice to be filed*)

                        dvirtue@mayerbrown.com

14                     71 S. Wacker Drive

                     Chicago, IL 60606

15                   Telephone: (312) 782-0600

16                     *Attorneys for Ascaya, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -